```
         UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF WEST VIRGINIA

                   CHARLESTON
```

**JEREMY LEE KISER**,

    **Movant**,

v.                                         **CASE NO. 2:06-cr-00151**
                                                       **CASE NO. 2:10-cv-01150**

**UNITED STATES OF AMERICA**,

    **Respondent**.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Movant's Motion to Vacate, Set Aside and Correct Sentence pursuant to 28 U.S.C. § 2255 (docket # 106, "Motion"). By Order entered October 6, 2010, this matter was reassigned to the Hon. John T. Copenhaver, Jr., United States District Judge (# 113). By Standing Order, this action was referred to the undersigned for submission of proposed findings and recommendation for disposition.

Movant, Jeremy Lee Kiser ("Defendant"), is serving a sentence of 24 months, upon the revocation of his term of supervised release. (Revocation Order entered May 6, 2010, # 90.) Defendant is appealing the Revocation Order. United States v. Kiser, No. 10-4543 (4th Cir.).

## FACTS AND PROCEDURAL HISTORY

The facts are set forth in the presentence report ("PSR").

7. On June 13, 2006, the defendant, Jeremy Kiser, made

a telephone bomb threat to the Women's Health Center of West Virginia, located at 510 West Washington Street, Charleston, West Virginia. He placed the call at approximately 1530 hours and stated to Sara Burdette, "How does it feel to work at a place that kills children?" According to Ms. Burdette, the defendant sounded angry and further stated, "You fuckin killer." Ms. Burdette transferred the defendant's call to telephone counselor Coretta Haircrow. Ms. Haircrow stated that the defendant identified himself as Jeremy and then asked her, "How does it feel to kill a baby that is never born?" The defendant further stated, "It was killing and that they plan to make abortion not legal in West Virginia and hopes that we (the clinic) blow the hell up because killing is not right." The defendant ended the conversation by stating, "We're going to blow you up." After the call ended, Ms. Haircrow used the *69 feature to retrieve the caller's phone number.

8. * * * A dispatcher for the Charleston Police Department informed ATF that the phone call had been made from the residence of Rhonda Kiser in Sissonville, West Virginia. * * *

9. * * * After his arrest, the defendant was interviewed and admitted calling the Women's Health Center and making the threats. In his statement, he said, "I watched a TV show about the American pro-life movement against abortion clinics on the evening of June 12, 2006. It showed abortion procedures and babies being killed. It upset me real bad. I saw how pro-life people snuck into building and blew them up. It upset me further and I decided to call the local abortion clinic to make the people here feel bad about themselves." The defendant further acknowledged that he never had any desire to harm anyone, just make them feel bad for working at an abortion clinic. During the defendant's transport to jail, he told the ATF agents that he was passionate against abortion because he had a girlfriend who had once had an abortion without his consent and that he felt it was wrong. Later, ATF agents conducted a search of the defendant's residence and found no evidence of any bomb-making materials.

(PSR, ¶¶ 7-9, at 4-5.)

On June 14, 2006, Defendant was arrested and a criminal

complaint was filed, charging him with willfully making a threat, by use of a telephone, concerning an alleged attempt to damage or destroy the Women's Health Center of West Virginia, by means of an explosive, in violation of 18 U.S.C. § 844(e) (# 1). Defendant was released on bond (# 5). On July 11, 2006, he was indicted on the same charge (# 10).

On November 15, 2006, Defendant pled guilty to the indictment and was again released on bond (## 31-32, 34). His defense attorney arranged for Defendant to undergo a psychological evaluation on September 19, 2006. (PSR, ¶ 38, at 9.) The results of the evaluation were included in the PSR as follows:

> Results of the testing substantiate impulsive behavior, attentional deficits, and a generally non-compliant behavior. Information obtained from the clinical interview was highly suggestive of manic and/or hypomanic behavior, episodic depressive episodes, and attentional deficits. Anti-social personality traits, manipulative behavioral patterns, and alcohol abuse were consistent with the defendant's behavior pattern. The evaluation concluded that while the defendant had demonstrated a tendency to antisocial behaviors, medical records indicated that he had never been treated with mood stabilizing medication appropriate for bipolar disorder, nor in recent years had he been treated with medication for Attention Deficit Disorder. The report recommends that, if the defendant receives alternative sentencing, he should receive appropriate psychiatric and psychological treatment that involves the utilization of psychotropic medications and psychotherapeutic intervention. It is felt that these medications would significantly curtail the degree of impulsivity demonstrated by the defendant's behavioral history.

Id. at 9-10.

Defendant's attorney submitted a Sentencing Memorandum which

included discussion of his lengthy history of mental health problems, placement in DHHR custody, juvenile offenses and foster care (# 38, at 3). On March 5, 2007, Defendant was sentenced to serve 36 months on probation, with two months on home detention. (Judgment in a Criminal Case entered March 5, 2007, # 41, Goodwin, C.J.) Defendant did not take a direct appeal. Accordingly, his conviction was final on March 15, 2007.

On September 10, 2007, a petition was filed, alleging that Defendant had violated his terms of probation by being arrested on March 26, 2007 for four misdemeanors (receiving and transferring stolen property, driving with a suspended license, no vehicle insurance, expired inspection sticker), being arrested on April 16, 2007 for petit larceny, and failing to submit five monthly reports, to follow his probation officer's instructions, to notify his probation officer of his change in residence and his arrests, and to cooperate in arranging mental health treatment. (Petition, # 45.) A warrant was issued (# 46). After Defendant was arrested on September 27, 2007 (## 47, 49), an amended petition was filed, alleging that Defendant also committed grand theft, transferring and receiving stolen property, interstate transportation of a stolen vehicle, soliciting for prostitution, and leaving the District without permission of his probation officer.

On November 13, 2007, after finding by a preponderance of the evidence that Defendant had committed some of the alleged

violations of probation, Chief Judge Goodwin revoked Defendant's probation and sentenced him to serve eight months in prison, to be followed by a 36 month term of supervised release. (Amended Revocation of Probation and Judgment Order, # 60.) The Amended Revocation Order includes the following language: "Based upon the recommendation of the probation [officer] the court **strongly recommends the defendant be placed in FCI Butner. The court recommends the defendant receive a complete mental health evaluation.**" [Emphasis in the original.]

Defendant was released from custody and began his term of supervised release on May 23, 2008. On June 30, 2009, the probation officer filed a petition to revoke Defendant's term of supervised release, alleging that Defendant had violated the terms of supervised release by being arrested for receiving and transferring stolen property, by being charged with improper registration, second offense driving on a suspended license (non-DUI), lack of proof of insurance, another charge of improper registration, third offense driving on a suspended license (non-DUI), and another charge of lack of proof of insurance (# 62). Defendant was arrested on the petition on July 2, 2009 (## 66, 67). On July 14, 2009, he was released on bond (# 70). On August 10, 2009, Defendant requested that his revocation hearing be held in abeyance for ninety days, which was granted (# 76). On November 16, 2009, the revocation hearing was continued generally until or

upon Defendant's successful completion of a vocational program (# 77).

On February 11, 2010, the probation officer filed an amendment to the pending petition, charging that Defendant had been accused of false pretenses (# 79). Chief Judge Goodwin ordered that the revocation hearing take place (## 79, 80).

On March 15, 2010, Defendant failed to appear for the revocation hearing and a bench warrant was issued for his arrest (# 85). Defendant was arrested on April 9, 2010 (# 87). At the revocation hearing on May 6, 2010, Chief Judge Goodwin found by a preponderance of the evidence that Defendant had committed the alleged violations of the term of supervised release, sentenced him to serve 24 months in custody, and made the following recommendation:

> The court **strongly** recommends the defendant receive an immediate medical and psychological evaluation. The defendant is to be placed on *suicide watch* until he receives a complete psychological evaluation. The medical evaluation should include an evaluation of the defendant's pacemaker. The court recommends the defendant to be placed in a facility near Charleston, WV.

(# 90.) [Emphasis in the original.] As noted above, Defendant has filed a direct appeal.

The § 2255 Motion was executed by Defendant on September 20 or 22, 2010, and filed with the Clerk on September 27, 2010.

Grounds for Relief

Defendant raises the following grounds for relief [spelling

corrected]:

> Ground one: Misdiagnosis of psychiatric disorder and inadequate [?] treatment while on supervised release, ordered by the court. In 2008, ordered by the court, I went to Prestera Care for psychiatric care where I was diagnosed with anxiety disorder and prescribed Xanax. Where I was told also I had impulse control. In 2010, in BOP of prisons, diagnosed with bipolar and mania, borderline schizophrenic and prescribed anti-psychotic Resperdol and manic depression medication Zoloft. Also notified probation officer Greg Swisher that I could not get a appointment while on the streets with Prestera.
>
> Ground two: Myself and my lawyer, David Bungard, had insufficient evidence due to the misdiagnosis and the court was ill-informed. In the court transcript, in defense evidence Exhibit 1, my lawyer informs the court about impulse control and manic behavior but no mention of a serious condition of bipolar disorder [and] schizophrenia disorder. So the defense had insufficient evidence. The government and everyone was ill-informed due to misdiagnosis.
>
> Ground three: At the time of the hearing, I did not get to present my case complete[ly]. I was under psychiatric distress. Mentally incompetent [?]. I was not under psychiatric care at the time. I also was not medicated for my bipolar disorder. I had just lost a little girl, an infant, and had a funeral [a] few weeks prior to the court date. I did not get to present my case to the judge and explain myself in complete mind. I was also going through with a divorce.
>
> Ground four: I was a witness for the government and testified in front of a grand jury for the government. I testified in front of a grand jury. I cooperated with the government. I also wanted to contest charge of "false pretenses" but did not because I took a plea bargain with [Assistant U.S. Attorney] Lisa Johnston and she asked us not to contest anything that "I will most likely get the plea bargain." I am innocent of this charge.

(Motion, # 106, at 4-8.) Defendant requests the following relief:

"Reduce sentence in guideline bargain. If not, I would like to

request the court to let me have a hearing to explain further. This would be fair - a reconsideration hearing." Id. at 12.

## TIMELINESS OF MOTION

Prior to 1996, a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 was not subject to a specific time limitation with respect to filing of the motion. However, in 1996, Congress enacted the Anti-Terrorism and Effective Death Penalty Act of 1996,(hereinafter the "AEDPA"), which established a one-year period of limitation governing the filing of motions for collateral relief under 28 U.S.C. § 2255.

The one-year period runs from the latest of one of four specified events:

> (1) the date on which the judgment on conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or Laws of the United States is removed if the movant was prevented from making such motion by governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court if that right has been duly recognized by the Supreme Court and made retroactively applicable to cases on review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

Defendant's conviction became final on the eleventh day after the entry of the Judgment in a Criminal Case on March 5, 2007, because he did not take a direct appeal. Rule 4(b), Federal Rules of Appellate Procedure. The one year period for filing a § 2255 motion concerning his underlying conviction expired on March 15,

8

2008. Defendant's first, second and third grounds for relief address his underlying conviction and are clearly barred by the one-year limitation.

Ground four refers to his desire to contest a State misdemeanor charge of "false pretenses," which was one of several alleged violations of his term of supervised release set forth in the last revocation petition (2010). Defendant has appealed that Revocation Order, so it is not yet final.

The undersigned proposes that the presiding District Judge **FIND** that Defendant's underlying conviction became final on or about March 15, 2007, when the time for filing a notice of appeal expired, and none of the other events specified in section 2255 apply in this case. Therefore, Defendant's time to file his section 2255 motion with respect to grounds one, two and three expired on or about March 15, 2008. With respect to ground four, Defendant's appeal from the Revocation Order is on-going and he must pursue his claims for relief on appeal.

It is respectfully **RECOMMENDED** that Defendant's § 2255 Motion be dismissed as untimely as to grounds one, two and three, and denied without prejudice as to grounds four.

The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code,

Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendations within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendations to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on the United States Attorney, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendations and to mail a copy of the same to Defendant and to counsel of record.

October 13, 2010
    Date

Mary E. Stanley
United States Magistrate Judge